## HAILE v. KELLER.

(Court of Civil Appeals of Texas. Amarillo. Feb. 10, 1914.)

1. BROKERS (§ 82*)—ACTION FOR COMMISSIONS —VARIANCE.

Where a broker sued for commissions alleging an express contract to pay 25 cents per acre for a sale of defendant's lands on terms satisfactory to him, plaintiff could not recover on proof that it was agreed he was to receive for his compensation all over $4 an acre for which he should sell the land.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 101–103; Dec. Dig. § 82.*]

2. BROKERS (§ 86*)—ACTION FOR COMMISSIONS —EVIDENCE—FINDINGS.

In an action for brokers' commissions, evidence held to sustain a finding that the alleged purchaser of the whole land was not ready, willing, and able to take the land on the terms on which the seller had authorized him to dispose of it.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 116–120; Dec. Dig. § 86.*]

3. BROKERS (§ 69*)—COMMISSIONS—CONTRACT PRICE—REASONABLE VALUE OF SERVICES.

Where a landowner authorized a broker to sell the land at $4 net to such owner, and the owner without knowledge of the fact sold to the broker's customer for $4, the broker could only recover the reasonable value of his services in the transaction.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 55; Dec. Dig. § 69.*]

Appeal from District Court, Dickens County; Jo. A. P. Dickson, Judge.

Action by C. C. Haile against Jim Keller. Judgment for defendant, and plaintiff appeals. Affirmed.

Browne & Hawkins, of Paducah, for appellant. B. D. Glasgow, of Spur, for appellee.

---

HUFF, C. J. C. C. Haile, appellant, as a real estate broker, brought suit against Jim Keller, appellee, for commissions, alleging that appellee placed and listed 3,750 acres of land with appellant to secure "a purchaser therefor upon the following terms and conditions, to wit: The defendant (appellee) agreed to pay this plaintiff (appellant) the sum of $.25 per acre on all of said land as a commission if this plaintiff should secure a purchaser therefor who was ready, willing, and able to buy said land upon terms satisfactory to the defendant, whereby it was agreed and understood by and between the plaintiffs and defendants that, if plaintiff would secure a purchaser to the above-described land upon the terms and conditions hereinabove set out, the defendant would pay to the plaintiff the commission of $.25 per acre, on the full amount of selling price of said lands and premises to be paid to the plaintiff by defendant at the time of making said sale or securing said purchaser, which the defendants agree, promise, and obligate themselves to do. Plaintiff would represent to the court that in pursuance to said agreement so made the plaintiff did on or about the 1st day of January, A. D. 1913, procure for defendant a purchaser for said 3,750 acres of land in the person of one T. J. Stanfield of Cottle county, Tex., which said person was ready, willing, and able to purchase said land at the price and on the terms acceptable to the defendant, and which had been agreed upon between said plaintiff and the defendant, whereby the defendant became bound and liable and promised to pay this plaintiff the said sum of $.25 per acre for said 3,750 acres of land."

[1] It will be seen from the pleadings that this suit was brought on an express contract to pay 25 cents per acre on the 3,750 acres when sold upon terms satisfactory to Keller. The contract proven is an entirely different one. The uncontroverted testimony is that appellant, Haile, was to have for his compensation all over the sum of $4 per acre for which he should sell the land. The appellant did not prove his case as alleged. The evidence is, if there was a sale, it was sold at only $4 per acre, which had been agreed Keller was to get for his land. Orynski v. Menger, 15 Tex. Civ. App. 448, 39 S. W. 388.

[2] In this case the agent does not sue for the reasonable value of his services in procuring a purchaser ready, willing, and able to buy on terms satisfactory but for the contract price of his services. There is no evidence of the value of the agent's services. The evidence offered by appellant is that T. J. Stanfield agreed to take the land at $4,25 per acre. The court was justified in finding that T. J. Stanfield did not agree and that he was not ready, willing, and able to take the land upon the terms upon which Keller was willing to sell it. The appellant testified he priced the land at $1.25 cash per acre and the balance to be paid in eight years. "This was the terms I was to price it on." T. J. Stanfield said he did not have the "cash money" and tried to put in some land on the trade situated in Oklahoma, some town lots and some vendor's lien notes which he testifies Keller would not accept, stating that he would not take trade but wanted the money and the vendor's lien on his own land. This witness further testified: "I never accepted the land at the terms and price it was priced by Mr. Haile, as Mr. Haile told me to see Mr. Keller." Keller testified in substance to the same effect. We do not think appellant proved that T. J. Stanfield was ready, willing, and able to buy upon the terms specified and he never accepted such terms. We think the testimony was sufficient to warrant such a finding by the trial court.

In this case it appears that Keller was not aware of the fact that T. J. Stanfield was a customer of Haile while he was negotiating with T. J. and G. A. Stanfield. Haile did not notify Keller that Stanfield was his customer, and Stanfield did not notify Keller that Haile had induced him to look at the land or to see Keller. The testimony of Keller is to the effect and in some particulars corroborated and is sufficient to have warranted the trial court in finding that Stanfield told Keller that he was not sent to see the land or Keller by an agent. It will be observed this was important to Keller in fixing the price of the land under the agency contract, as $4 was all he desired or asked for the land. If Stanfield had agreed with Haile to pay $4.25 for the land, Keller could not defeat Haile out of his agreed commission by selling at a less price. If it was done for that purpose, there is not question under the authorities but that he would be liable. Having done so innocently or ignorantly, the rule may be different as to what his compensation should be. If the sale was consummated which Haile claims to have made, or if Keller refused to complete it, Haile would be entitled to the agreed compensation. It has been said by the courts in this state: "While the owner has such agent at work and himself sells to some person that comes along, he does so at the risk of that person having been procured by the agent." McDonald v. Cabiness, 98 S. W. 943; Id., 100 Tex. 615, 102 S. W. 721; Bound v. Simkins, 151 S. W. 572. In the case of Schultz v. Zelman, 111 S. W. 776, Judge James, who rendered the opinion first in the McDonald Case, supra, said: "Under these facts and conditions, there is no doubt that the sale was due to Mrs. Schultz's services, and, under the above decision, she would be entitled, not, however to the agreed commission of 5 per cent. on the sale, because the sale resulted in bringing a less price than was specified in connection with the agreement to pay her that percentage, but to a reasonable compensation." The pleadings

asked for a reasonable compensation in that case, and were so noted by the court. In the McDonald Case it was held also: "But plaintiff in his petition asks for reasonable compensation for the services of procuring a purchaser to whom appellant sold on terms satisfactory to himself for more than he expected to get net from any purchaser obtained through plaintiff. The authorities, and those in this state, appeal to hold that the agent in such a case is entitled to some compensation." The court then further said: "As we have already said, the terms of the contract are such as may, under the proof here, debar plaintiff from receiving the excess over $3.25 an acre. But plaintiff has also asked for reasonable compensation * * * on that basis." The Supreme Court on writ of error apparently approved the decision of the Court of Civil Appeals upon that statement. The right of a broker to compensation for his services, whether the principal had actual knowledge of such service at the time of completing the sale, is adopted by the Texas courts and is apparently the rule by the majority of the courts. Note Quist v. Goodfellow, 8 L. R. A. (N. S.) 153; Ball v. Dolan, 15 L. R. A. (N. S.) 272; Gilmore v. Balio, 34 L. R. A. (N. S.) 1050.

[3] If appellant was entitled to recover under his pleadings in this case, it was 25 cents per acre. He claims he found a purchaser. That purchaser testified he did not accept the price and terms offered by Haile; that is, $4.25 per acre, $1.25 cash per acre. The cash T. J. Stanfield testified he could not pay, and he never accepted the price $4.25, but accepted the offer of $4 per acre if Keller would take trade. If it can be said he ever purchased at that price and on those terms, appellant was entitled to only reasonable compensation for his services in finding such purchaser. This appellant did not ask for or prove. In this case Keller fixed his price at $4 net to him, and had he known that there was an agent he would not have sold for that price and doubtless would have added the commission to the price. Under such facts, we think appellant is not entitled to recover the contract price, but only what his services were reasonably worth in the transaction. Schultz v. Zelman, 111 S. W. 776.

We also think the court was justified in finding there was no sale to T. J. Stanfield. The facts show that, when T. J. Stanfield notified Keller he could not pay the cash required, he then suggested that his father, who lived at Waco, Tex., would perhaps buy the land for a brother of Stanfield. The appellee and T. J. Stanfield went to Waco and saw the father of T. J. Stanfield, G. A. Stanfield, and appellee and G. A. Stanfield entered into a written contract on February 1, 1913, in which Keller agreed to sell to G. A. Stanfield 3,750 acres of land in Dickens county, for the sum of $4 per acre, $2,500 cash, the balance due in one, two, three, four, and five years from date of deed. Keller was to furnish abstract and deliver possession to G. A. Stanfield on May 1, 1913; Stanfield agreeing to take the land if his attorney found a perfect title to the land in Keller. The parties each put up a note payable to the order of the other for $1,000, "as a forfeit should they not comply with this contract." Keller's testimony is to the effect that the sale was to G. A. Stanfield and to him alone. He told G. A. Stanfield that he would have to come to Spur, where appellee lived, to sign the papers. This Stanfield never did. Keller wrote to him two or three times but received no answer. It also appears the attorney employed to examine the abstract pointed out some defect in the papers, which is not shown. This defect Keller claims to have corrected. G. A. Stanfield did not make the cash payment or execute the notes called for by the contract. His testimony is not in this case. The trade was not consummated by May 1, 1913, and Keller, in the afternoon of May 2, 1913, sold the land to another party for $4 per acre. T. J. Stanfield testified that the contract to purchase made by his father was in fact made for him, and if the court had accepted his testimony there was sufficient evidence to show a contract of sale to him; but we think there is also sufficient evidence to support a finding by the trial court that there in fact was no sale made to T. J. Stanfield, as alleged by appellant. There is no evidence of a purpose to defeat appellant out of his commission by making the contract with G. A. Stanfield, and it appears to have been made at the time by Keller in good faith. We do not think the evidence supports appellant's allegation to the effect that he procured a purchaser in the person of T. J. Stanfield, who at that time was ready, willing, and able to buy the lands upon terms satisfactory to Keller.

We shall not discuss the terms of the contract or whether it can be enforced or not. However, we do not agree with appellee in his contention as to the construction of the forfeiture clause. Our views on this point will be found expressed in the case of Crum v. Slade & Bassett, 154 S. W. 351. There are other features of the contract which have not been presented and which we will not further notice. We believe the judgment of the court, under the facts and pleadings, should be affirmed.

Affirmed.